Hitchcock, C. J.
By the bill of exceptions it appears that, on the trial of the case, the defendants in error introduced testimony tending to prove a contract with T. Z. Smith, while captain of the Montgomery, as stated in the declaration, and that this contract was on account of the boat, or for transportation in this particular boat; that the contract was violated by a refusal to transport flour, after October 2, 1846; that the defendants in error were under the necessity, after that time, of employing other boats to transport their flour, and compelled to pay a greater price for freight than under their contract with Smith they were bound to *51 pay. Tho testimony offered to prove the contract consisted principally in the *proof of declarations made by Smith while he was captain of the boat. The price actually paid for freight was not above the ordinary rate for the season.
After the testimony was closed, counsel for plaintiff in error requested the court, among other things, to charge the jury:
“1. That no recovery can be had upon the first count in the 'declaration, because it makes no ease as against the defendant.
“ 2. That the second count does not set up a contract upon which the defendant is liable to seizure and suit under the statute.”
To this request the court responded as follows: “Upon the first and second points made in the request, a majority of the court are of opinion, and so charge, that the contract set forth in each of the counts in the declaration, are such contracts as Would hold the defendant; we, therefore, refuse to charge upon those points as requested by the defendant’s counsel.”
This is assigned as error, and presents this single question, whether an executory contract to carry freight upon a particular boat or vessel, attaches to said boat or vessel, and is within the statute of February 26, 1840, “providing for the collection of claims against steamboats and other water-crafts, and authorizing proceeding against the same by name.” This question might as well have been presented by demurrer, but it may be made as it now is, by calling upon the court for special instructions to the jury. This is a new question in this court, although it has heretofore been decided upon the circuit.
For tho non-performance of a contract like the one set forth in this declaration, the defaulting party would be liable to an action. But if he was ready and willing, and offered to transport the freight, I think he would not be liable in damages, for not offering to do it in the identical boat specified in the contract. The object of the freighter is to procure the transportation of his property, and it can not bo essential to him whether it be done in one boat or another.
A common carrier is' liable for all loss or damage to goods *which he undertakes to carry, unless the loss arises from inevitable accident, or from the public enemy. But this stringent rule can not be applied to him until tho goods are once in his possession. When so in his possession the law imposes this lia *52 bility. But should a common carrier enter into a contract to carry goods hereafter, and should he refuse to comply with that contract, we suppose he will be liable to the same amount of damages, and no greater, than would any other individual under similar circumstances.
The first section of the act before referred to, provides, “that steamboats,” etc., “ shall be liable for debts contracted on account of the craft, by the master,” etc., “ for material, supplies, or labor, in building, repairing, furnishing, or equipping the same,” etc. A contract to furnish materials, labor, or supplies, is not within the statute. But in order that the right may exist, to sustain an action against the craft, by name, as provided in the second section, the “material, supplies, or labor,” must have been actually furnished.
The statute further provides, “that the craft shall be liable for damages arising out of any contract for the transportation of goods or persons, or for injury done to such person or property by said craft,” etc.
Now it is said by counsel for tho defendant, that here was a contract for the transportation of goods, and therefore it is within the letter of the statute. But the damages sustained do not, strictly speaking, arise out of this contract. They arise from the refusal of Smith, tho other contracting party, to comply with his contract, whereby the defendants were under the necessity to procure other persons than Smith to transport thoir flour, at a higher charge for freight. But the bill of exceptions shows that they paid no more than the ordinary rate for that season.
It seems to have been supposed that it was necessary that tho contract for the transportation of%oods, referred to in the statute, must be on account of the craft, and therefore efforts were made to prove that this contract was on such account. *But how .it can be said that a contract to carry on a particular boat, is a contract on account of, or upon the credit of that boat, I do not readily perceive. But the statute does not in fact prescribe that the “ contract for the transportation of goods ” shall be on account of, or upon the credit of the boat; that phraseology applies alono to “materials, supplies, and labor.”
It seems to tho court that an executory contract, like the one now before tho court, was not in the mind of the general assembly, in the enactment of this law, but that body had an entirely *53 different contract, or class of contracts, in view. The owner of a steamboat, or other water-craft, employed in the transportation of goods, is a common carrier, and is hound safely to carry and deliver the goods, and nothing will exonerate him, unless prevented by inevitable accident, or the public enemy. There is an express or implied contract between him and the person for whom he carries, to this effect—express, if there is a bill of lading; implied, if he carries without any such bill.
If the goods are received on board the boat or vessel, this contract attaches, and if the goods are injured or lost, there is an injury or damage arising out, or in consequence of the contract, while the same is in the course of performance. The owner himself would be liable, and by the act of February 26,1840, an action to recover lor the loss might be sustained by the person injured against the craft by name. As the “ materials, labor and supplies” were'furnished to her, so the goods to bo carried were received on board, and there is the same reason for allowing the proceedings authorized in the statutes in the one case as the other. But there is no reason why a remedy should be given against the craft by name, merely because the owner has failed to comply with his executory contract to carry goods at some future period.
In the opinion of this court, the court of common pleas erred in refusing to charge as requested, in the two particulars named, and this renders it unnecessary to look any further into the case.
*The judgment is reversed, with costs, and the case remanded to the court of common pleas, to carry this judgment into execution.
Spaulding, J., did not sit in this case, having originally been of counsel.